**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>KII Liquidating Inc. (f/k/a Katy Industries, Inc.), *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 17-11101 (KJC)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 576 & 629** |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF
THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION PROPOSED JOINTLY BY THE
<u>DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

The Official Committee of Unsecured Creditors (the "***Committee***") in the above-captioned chapter 11 cases (the "***Chapter 11 Cases***") of the above-captioned debtors and debtors in possession (the "***Debtors***"), by and through its undersigned counsel, hereby submits this memorandum of law in support of confirmation, pursuant to section 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), of the *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation Proposed Jointly by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 629] filed April 23, 2018 (as may be amended or supplemented, the "***Plan***").[2]  In support of the Plan, the Committee relies on the *Certification of JND Corporate Restructuring Regarding Tabulation of Votes in Connection with the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidating*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are:  KII Liquidating Inc. (f/k/a Katy Industries, Inc.) (7589), ComPro Liquidating LLC (f/k/a Continental Commercial Products, LLC) (3898), FTWH Liquidating Inc. (f/k/a FTW Holdings, Inc.) (7467), FWPI Liquidating Inc. (f/k/a Fort Wayne Plastics, Inc.) (7470), Wabash Holding Corp. (9908), KTI Liquidating Inc. (f/k/a Katy Teweh, Inc.) (9839), WII, Inc. (0456), TTI Holdings, Inc. (8680), GCW, Inc. (5610), Hermann Lowenstein, Inc. (4331), American Gage & Machine Company (7074), WP Liquidating Corp. (2310), Ashford Holding Corp. (8113), and HPMI, Inc. (4677).  The mailing address for each of the Debtors listed above, solely for purposes of notices and communications, is 400 S. Hope Street, Suite 1050, Los Angeles, California 90071 (<u>Attn</u>.: Lawrence Perkins, Chief Restructuring Officer).

[2]    Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

*Proposed Jointly by the Debtors and the Official Committee of Unsecured Creditors* [D.I. 631]

(the "***Voting Certification***") and the *Omnibus Reply of the Official Committee of Unsecured*

*Creditors to Objections to Confirmation of the First Amended Combined Disclosure Statement*

*and Plan of Liquidation* [D.I. 620] (the "***Omnibus Reply***").  In further support of the Plan, the

Committee respectfully represents as follows:

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Debtors' Business

1.    The Debtors in these Chapter 11 Cases were a leading manufacturer, importer,

and distributor of commercial cleaning and consumer storage products, as well as a contract

manufacturer of structural foam products.  The Debtors' corporate headquarters are located in St.

Louis, Missouri.  Prior to the sale of substantially all of their assets detailed below, the Debtors'

business operations included manufacturing at three (3) plant facilities located in the United

States and distribution across the United States and Canada.  As of the Petition Date, the Debtors

employed approximately 300 nonunion employees and supplemented its workforce with

additional temporary personnel, independent contractors, and an external sales force.

2.    A more complete description of the Debtors' businesses, capital structure, and the

circumstances leading to the Chapter 11 Cases may be found in the *Declaration of Lawrence*

*Perkins in Support of Chapter 11 Petitions and First Day Motions and Applications* [D.I. 15]

(the "***Perkins Declaration***") filed on May 14, 2017 (the "***Petition Date***").

### B.    The Chapter 11 Cases and Asset Sale

3.    On the Petition Date, each of the Debtors filed a voluntary petition for relief with

this Court under chapter 11 of the Bankruptcy Code.  The Debtors continued to operate their

businesses and are managing their property as debtors in possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has

been made in these Chapter 11 Cases.  By order of the Court entered on May 16, 2017, these Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015 for procedural purposes only.

4.      On May 26, 2017, the Office of the United States Trustee filed the Notice appointing the Committee in these Chapter 11 Cases [D.I. 75].  On July 31, 2017, the Office of the United States Trustee filed the Notice appointing an official committee of retirees in these Chapter 11 Cases pursuant to section 1114 [D.I. 317] (the "***Retirees' Committee***").

5.      The Debtors filed these Chapter 11 Cases with the goal of consummating a sale of all or substantially all of their assets through section 363 of the Bankruptcy Code.  To this end, on the Petition Date, the Debtors filed their *Motion of Debtors for Entry of Orders (I) (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially All Assets, (B) Approving Stalking Horse Protections, (C) Approving Procedures Related to Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Approving the Form and Manner of Notice Thereof, and (II) (A) Approving and Authorizing Sale of Substantially All of the Debtors' Assets to the Successful Bidder Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [D.I. 18] (the "***Sale Motion***").

6.      The Sale Motion described how the Debtors entered into an asset purchase agreement of the Debtors' assets with Jansan Acquisition, LLC ("***Jansan***") as the stalking horse purchaser (the "***Stalking Horse Purchaser***"), a newly created entity co-owned by Highview Capital, LLC and affiliates of Victory Park Management, LLC, the Agent of the Debtors' Second Lien Credit Facility ("***VPC***" or the "***Second Lien Agent***"), and VPC SBIC I, L.P. as lender,

3

comprised of both cash and credit bid, to be effectuated pursuant to section 363 of the Bankruptcy Code.

7.      On the Petition Date, the Debtors also filed their Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Superpriority Secured Debtor-in-Possession Financing, (II) Authorizing Postpetition Use of Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [D.I. 14] (the "***DIP Financing Motion***").

8.      On June 12, 2017, the Committee filed an objection to the Sale Motion and DIP Financing Motion [D.I. 119].  On June 19, 2017, the Court entered the *Final Order Pursuant to Sections 105, 361, 362, 363, 365, and 507 of the Bankruptcy Code (I) Authorizing Debtors to Obtain Superpriority Secured Debtor-in-Possession Financing, (II) Granting Adequate Protection to the Prepetition Second Lien Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [D.I. 167] (the "***Final DIP Order***"), which reflected certain changes from the original proposed form of order that were made to resolve the Committee's objection.

9.      On June 19, 2017, the Court also entered the Order (I) (A) Approving and Authorizing Bidding Procedures in Connection with the Sale of Substantially All Assets, (B) Approving Stalking Horse Protections, (C) Approving Procedures Relating to the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Approving the Form and Manner of Notices Thereon [D.I. 163] (the "***Bidding Procedures Order***"), which reflected certain changes from the original proposed form of order that were made to resolve the Committee's objection.  The Bidding Procedures Order approved Jansan as the stalking-horse bidder for the Debtors' assets and established certain procedures for submitting competing bids.

10.     On June 21, 2017, the Debtors filed an Amended and Restated Asset Purchase Agreement with Jansan [D.I. 180], which reflected certain changes from the original agreement that were included to resolve the Committee's objection to the proposed bidding procedures.

11.     In accordance with the Bidding Procedures Order, on July 5, 2017, the Debtors filed a proposed form of the Order (A) Approving and Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Successful Bidder's Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief [D.I. 218].

12.     On July 11, 2017, the Committee filed its Objection and Reservation of Rights With Respect to Form of Sale Order [D.I. 268].

13.     On July 12, 2017, the Debtors filed the *Notice of Successful Bidder and Cancellation of Auction* [D.I. 276], indicating that the only qualified bid received as of the bid deadline was that of Jansan, the stalking-horse purchaser.  Accordingly, no auction was conducted and Jansan was deemed the Successful Bidder pursuant to the Bidding Procedures Order.

14.     On July 18, 2017, the Court entered the Order (A) Approving and Authorizing Sale of Substantially All of Debtors' Assets Pursuant to Purchaser's Asset Purchase Agreement, Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief [D.I. 295] (the "***Sale Order***"), which reflected certain changes from the original proposed form of order that were made to resolve the Committee's objection.

15.    The Sale Order approved the final form of Amended and Restated Asset Purchase Agreement with Jansan attached as <u>Exhibit A</u> thereto (as amended and supplemented, the "***Final APA***"). The Final APA established a purchase price of approximately $63 million for the Debtors' assets.

16.    On July 21, 2017, the Debtors and Jansan closed on the sale of the Debtors' assets pursuant to the Final APA.

### C.    The Committee Litigation

17.    On July 25, 2017, the Committee filed an adversary complaint against Jansan, VPC and certain of its affiliates, and Charles Asfour, the Debtors' former Chairman of the Board (the "***Committee Litigation Defendants***") initiating Adversary Proceeding Case Number 17-50937 (the "***Committee Litigation***").  In the Committee Litigation, the Committee asserts claims against the Committee Litigation Defendants for equitable subordination, recharacterization, fraudulent transfer, unauthorized post-petition transfer, and breach of fiduciary duty.

18.    On September 12, 2017, the Committee Litigation Defendants filed their *Motion to Dismiss Adversary Proceeding* [Adv. D.I. 14] (the "***Motion to Dismiss***").  The Committee filed its brief in opposition to the Motion to Dismiss on September 26, 2017 [Adv. D.I. 21].  The Committee Litigation Defendants filed its reply brief on October 6, 2017 [Adv. D.I. 23].  The Court heard oral argument on the Motion to Dismiss and the Committee's opposition thereto on December 13, 2017.  The Motion to Dismiss is currently under advisement by the Court.

### D.    The Plan Process and Negotiations

19.    Subject to the issues raised in the ongoing Adversary Proceeding, the sale of the Debtors' assets is complete.  The Court established (i) October 9, 2017, as the deadline (bar date) by which entities other than governmental units had to file prepetition proofs of claim (including claims entitled to priority under section 503(b)(9) of the Bankruptcy Code) and administrative

claims incurred on or before July 21, 2017, and (ii) November 10, 2017, as the deadline (bar

date) for governmental units to file prepetition claims [D.I. 340].

20.     In light of the completed sale process and occurrence of the bar dates described

above, the Debtors and the Committee believed that the prompt conclusion of these Chapter 11

Cases by means of a chapter 11 plan of liquidation would best preserve estates' assets.  The

Debtors and the Committee cooperated in good faith regarding the orderly wind-down of the

Chapter 11 Cases and the negotiation and proposal of a liquidating chapter 11 plan.  And to

streamline the process and save costs, the Debtors and the Committee decided the best course of

action was to file a combined plan and disclosure statement, and to seek preliminary approval of

the disclosures and the scheduling of a combined, final hearing on plan confirmation and the

adequacy of the disclosures.

21.     To this end, on February 5, 2018, the Debtors and the Committee (the "***Plan

Proponents***") filed the initial version of the Plan [D.I. 528], followed the next day by a motion

[D.I. 533] (the "***Conditional Approval and Procedures Motion***") seeking (i) conditional

approval of the adequacy of the disclosure provisions in, and procedures for solicitation of votes

with respect to, the Plan, and (ii) the scheduling of a combined hearing to consider final approval

of the disclosures and solicitation procedures, and confirmation of the Plan.  The Plan is a

straightforward "pot plan" of liquidation providing for the appointment of Plan Administrator to

liquidate the remaining assets of the Debtors' estates (consisting primarily of litigation and

insurance assets), reconcile claims against the Debtors, and make distributions to creditors.

22.     As of the Petition Date, the Debtors were obligated to provide certain "retiree

benefits" as defined in section 1114 of the Bankruptcy Code, as discussed in more detail in

Section 4.1.2(5) of the Plan.  The Plan as originally filed contained a proposed settlement

regarding termination of retiree benefits, which was later rejected by the Retirees' Committee. On February 23, 2018, the Debtors filed the *Debtors' Motion for an Order Pursuant to Section 1114 of the Bankruptcy Code, Terminating Retiree Benefits* [D.I. 557], which was joined by the Committee [D.I. 561].

23.     The Court held a hearing on the Conditional Approval and Procedures Motion on February 27, 2018, after which, on March 8, 2018, it entered its *Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Approving the Form of Ballot and Solicitation Materials, (C) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (D) Scheduling a Plan Confirmation Hearing and Deadline for Filing Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan, (E) Approving the Related Form of Notice, and (F) Granting Related Relief* [D.I. 576] (the "***Conditional Approval and Procedures Order***"), which conditionally approved the Plan (as amended March 5, 2018 [D.I. 611, Ex. A]) for solicitation purposes only and scheduled a hearing to consider final approval of the disclosure provisions of, and confirmation of, the Plan (the "***Confirmation Hearing***").

24.     The solicitation version of the Plan included a revised proposed settlement regarding termination of retiree benefits, which would become effective if and only if approved by order of the Court.  Thereafter, the Debtors, the Retirees' Committee, and the Committee engaged in settlement discussions regarding termination of the retiree benefits and treatment of retirees' claims.  As a result of these discussions, the parties submitted the *Agreed Order Authorizing Debtors to Terminate Retiree Benefits*, which was entered by the Court on March 22, 2018 [D.I. 591] (the "***Benefits Termination Order***").  In light of the Benefits Termination Order,

which provides the applicable terms and conditions of the Debtors' termination of their retiree benefits programs, Section 12 of the Plan dealing with retiree benefits is moot.

25.     Subsequent to the commencement of solicitation on the Plan, the Debtors received a proposal from Investment Recovery Group whereby KII Liquidating Inc. (f/k/a Katy Industries, Inc.) would (i) be reorganized under the Plan, (ii) be re-vested on the Effective Date with all claims, rights to refunds, and other tax attributes available immediately prior to the Effective Date that have not been identified by the Debtors, and (iii) issue a share of common stock to Investment Recovery Group in exchange for a cash payment of $100,000 on the Effective Date. The Plan Proponents were amenable to this proposal, and agreed to make the necessary changes to the Plan to implement it.

26.     To promote efficient administration and effectuation the Plan, including for purposes of distributions to be made under the Plan, the Plan proposes to consolidate the Debtors' estates solely with respect to holders of general unsecured claims.  Prior to the objection deadline for the Plan, counsel for the Pension Benefit Guaranty Corporation (the "**PBGC**") and Majestic-Norwalk, LLC (collectively with its affiliates Norwalk Industrial I, LLC and Norwalk Industrial Sub, LLC, "**Majestic**") informally objected to the Plan's proposed consolidation of the Debtors' estates for purposes of distributions to general unsecured claims, based on the effect of such consolidation on joint-and-several claims of the PBGC and Majestic against multiple Debtors.  The PBGC and Majestic also cast their respective ballots to reject the Plan.  Following discussions among the professionals for the Committee, the Debtors, the PBGC, and Majestic, the Plan Proponents agreed to amend the Plan to provide for the allowance of (i) the PBGC's claim at a multiple of 4x, and (ii) Majestic's claim at a multiple of 1.4x, subject to certain conditions, all as set forth in Sections 10.1.1 and 10.1.2 of the Plan, respectively.

These claim multiples were designed to reasonably approximate, within the consolidated chapter 11 plan structure, the distributions the PBGC and Majestic would receive in a hypothetical deconsolidated chapter 7 liquidation of the Debtors' estates after giving effect to the joint-and-several claims against multiple Debtors.  In light of these amendments to the Plan, the PBGC and Majestic have indicated they will change their votes to accept the Plan.

27.    Formal objections to the Plan were filed by the Internal Revenue Service [D.I. 616] (joined by the Texas Comptroller of Public Accounts [D.I. 619]) and by the Debtors' former President and Chief Executive Officer, David Feldman [D.I. 618].  Responses to these objections were set forth by the Committee in the Omnibus Reply and are not reiterated in this Memorandum of Law.

28.    On April 23, 2018, the Committee filed the current version of the Plan, which includes provisions relating to the new stock purchase and the resolutions of the PBGC's and Majestic's objections to substantive consolidation.  The Committee also filed a blackline of the current version of the Plan to the solicitation version of the Plan showing the changes [D.I. 630].  Also on April 23, 2018, the Plan Proponents filed the Voting Certification and a proposed form of order confirming the Plan [D.I. 632] (the "***Proposed Order***").

29.    As is apparent from the Voting Certification, after giving effect to the anticipated change in votes by the PBGC and Majestic, each of the fourteen voting Classes of Claims accepted the Plan, either unanimously or by a wide margin in both number and amount of voting Claims, as set forth in the following table:

| Class | Acceptances/Total Ballots (%) | Acceptance/Total Dollars (%) |
|-------|-------------------------------|------------------------------|
| 4A    | 37 / 46 (88.1%)               | $5,785,528 / $6,418,147 (90.7%) |

| Class | Acceptances/Total Ballots (%) | Acceptance/Total Dollars (%) |
|---|---|---|
| 4B | 80 / 86 (93%) | $6,270,686 / $6,346,140 (98.8%) |
| 4C | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4D | 29 / 30 (96.6%) | $1,610,770 / $1,703,562 (94.6%) |
| 4E | 3 / 3 (100%) | $1,519,693 / $1,519,693 (100%) |
| 4F | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4G | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4H | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4I | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4J | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4K | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4L | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4M | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| 4N | 1 / 1 (100%) | $1,352,008 / $1,352,008 (100%) |
| **TOTALS** | **159 / 171 (93%)** | **$28,706,761 / $29,465,250 (97.4%)** |

## II.    ARGUMENT IN SUPPORT OF THE PLAN

### A.    The Plan Contains Adequate Information Within the Meaning of Section 1125(a) of the Bankruptcy Code

30.    In the Conditional Approval and Procedures Order, the Court preliminarily approved the disclosure provisions as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.  There have been no objections filed with respect to the adequacy of the Plan's disclosure provisions, nor has any party requested additional disclosures to be made.

31.    What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.  *See* 11 U.S.C. § 1125(a)(1); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the Plan") (internal quotation marks omitted); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) (noting that "adequate information" varies on a case-by-case basis).  For instance, Section 4 of the Plan contains descriptions and summaries of, among other things:  (a) the Debtors' and the Committee's efforts to maximize the value of the bankruptcy estates during these Chapter 11 Cases; (b) certain events and circumstances precipitating the commencement of these Chapter 11 Cases; (c) the key terms of the Plan; (d) risk factors regarding confirmation and consummation of the Plan; (e) risk factors attendant to the various alternatives to confirmation of the Plan; and (f) federal tax law consequences of the Plan.  Accordingly, the Committee submits that the Plan's disclosure provisions contain adequate information within the meaning of section 1125(a) of the Bankruptcy Code and should be approved as such on a final basis.

**B.    The Plan Complies with the Formal Requirements
for Confirmation Under the Bankruptcy Code and Rules**

32.    The Plan satisfies the basic formal and procedural requirements for confirmation

under the Bankruptcy Code and Rules because it:

- Designates Classes of Claims and Interests subject to section 1122 of the Bankruptcy Code as required by section 1123(a)(1).

- Specifies which Classes of Claims and Interests are unimpaired by the Plan (i.e., Classes 1A-N, 2A-N, and 3A-N) as required by section 1123(a)(2) of the Bankruptcy Code.

- Specifies the treatment of impaired Claims and Interests (i.e., Classes 4A-N, 5A-N, 6A-N, and 7A-N) as required by section 1123(a)(3) of the Bankruptcy Code.

- Provides for equal treatment of Claims and Interests within a particular Class as required by section 1123(a)(4) of the Bankruptcy Code.

- Provides adequate means for the Plan's implementation (including, without limitation, the appointment of the Plan Administrator and vesting of Estate property in ComPro Liquidating, Inc. (f/k/a Continental Commercial Products, LLC)) as required by section 1123(a)(5) of the Bankruptcy Code.

- Provides for the appointment and approval of the compensation of the Plan Administrator by the Court, thus complying with the requirement in section 1123(a)(7) of the Bankruptcy Code that the manner of selection of any officer under the Plan are "consistent with the interests of creditors and equity security holders and with public policy."

- Provides for Court approval of pre-confirmation professionals' fees and expenses, as required by section 1129(a)(4) of the Bankruptcy Code.

- Provides for payment in full of Administrative Expense Claims, Priority Claims, and Secured Tax Claims as required by section 1129(a)(9) of the Bankruptcy Code.

- Has been accepted by at least one impaired Class of Claims at each Debtor, without counting any acceptance by an insider, as required by section 1129(a)(10) of the Bankruptcy Code.

- Provides for payment of all fees payable under 28 U.S.C. § 1930 as required by section 1129(a)(12) of the Bankruptcy Code.

13

- Does not implicate the requirements of sections 1129(a)(6) (regarding rate changes subject to regulatory approval), (a)(13) (regarding retiree benefits), (a)(14) (regarding domestic support obligations), (a)(15) (regarding individual debtors), (a)(16) (regarding not-for-profit entities), (d) (applicable only where a governmental unit objects)[3] or (e) (applicable only to small business cases).

- Is the only plan in these Chapter 11 Cases, thus satisfying the "one plan" limitation imposed by section 1129(c) of the Bankruptcy Code.

33.     In addition, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, including sections 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018 regarding the disclosures in, and solicitation of votes on, the Plan.  Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.  *See, e.g., In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723, 769 (Bankr. S.D.N.Y. 1992) (finding section 1129(a)(2) satisfied where debtors complied with all provisions of Bankruptcy Code and Bankruptcy Rules governing notice, disclosure and solicitation relating to plan).  And as will be shown by evidence at the Confirmation Hearing, the Plan Proponents proposed the Plan "in good faith and not by any means forbidden by law" as required by section 1129(a)(3).  *See In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." (internal quotation marks, citation omitted)); *see also In re Century Glove, Inc.*, No. 90-400-SLR, 1993 U.S. Dist. LEXIS 2286, at *15 (D. Del. Feb. 10, 1993) (finding good faith should be evaluated in light of the totality of circumstances surrounding confirmation).

---

[3] And in any event, the evidence at the Confirmation Hearing will show that the principal purpose of the Plan is not the avoidance of taxes or the application of section 5 of the Securities Act of 1933.  *See* 11 U.S.C. § 1129(d).

### C.     The Plan Satisfies the Best Interests Test

34.     Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a Claim or Interest that has not accepted the Plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of th[e Bankruptcy Code] on such date . . . ."  The evidence at the Confirmation Hearing will establish that this "best interests test" is satisfied (i) with respect to all holders of impaired Claims in Classes 4A-N that have not accepted the Plan, because under the Plan they will receive at least as much as they would receive in a chapter 7 liquidation of the Debtors, and (ii) with respect to holders of impaired Claims in Classes 6A-N and impaired Interests in Class 7A, because they would not receive anything in a chapter 7 liquidation.

### D.     The Plan is Feasible

35.     Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine that confirmation of the Plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."

36.     In the context of a liquidating plan, this "feasibility" requirement is established by demonstrating that the debtor is able to satisfy the conditions precedent to effectiveness of the plan and has sufficient funds to meet its post-confirmation date obligations to pay for the costs of administering and fully consummating the plan and closing the chapter 11 cases.  *See In re NexPak Corp.*, No. 09-11244 (PJW), 2010 WL 5053973, at *6 (Bankr. D. Del. May 18, 2010) (finding plan feasible where "[t]he Plan properly provides for the means for the Plan Administrator to complete the liquidation of the estates and to make the distributions to creditors according to the Plan and the relative priorities of the parties").  The evidence at the

15

Confirmation Hearing will establish that the Debtors likely will satisfy or waive the conditions precedent to the Effective Date, set forth in Section 12.1 of the Plan, and the Plan Administrator will have sufficient funds to administer and consummate the Plan and subsequently close these Chapter 11 Cases.  Moreover, confirmation of the Plan cannot be followed by any liquidation beyond that prescribed by the Plan, nor would confirmation be followed by the need for further financial reorganization.  As such, the Plan will satisfy the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

## E.    The Plan Satisfies the "Cramdown" Requirements With Respect to the Deemed Rejecting Classes

37.    Classes 6A-N (Subordinated Claims) and 7A (Interests in Katy Industries, Inc.) (collectively, the "*Deemed Rejecting Classes*") will receive no distributions under the Plan and are therefore deemed to have rejected the Plan.  *See* 11 U.S.C. § 1126(g).  Since the Plan does not satisfy the requirement of section 1129(a)(8) of the Bankruptcy Code with respect to all impaired Classes, it must be confirmed under the "cramdown" provisions of section 1129(b).

38.    Section 1129(b) permits confirmation of a chapter 11 plan in circumstances where the plan is not accepted by all impaired classes of claims and equity interests, so long as "the plan does not discriminate unfairly, and is fair and equitable, with respect to" each non-accepting impaired class.  11 U.S.C. § 1129(b)(1).  Thus, the Court may cram down the Plan over the non-acceptance of the Deemed Rejecting Classes if the Plan does not "discriminate unfairly" against and is "fair and equitable" with respect to each such Class.  The Plan satisfies those requirements, and thus can be crammed down on the Deemed Rejecting Classes.

### (1)    *The Plan Does Not Discriminate Unfairly*

39.    The requirement in section 1129(b)(1) of the Bankruptcy Code that a plan not discriminate unfairly against impaired, dissenting classes focuses on the treatment of the

dissenting class relative to other classes having similar legal rights. *See* H.R. Rep. No. 95-595, at 416-417 (1977) ("The plan may be confirmed . . . if the class is not unfairly discriminated against with respect to equal classes if junior classes will receive nothing under the plan."); *see also In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 62 (Bankr. S.D.N.Y 1990) (same). Section 1129(b)(1) of the Bankruptcy Code does not prohibit *all* discrimination among classes; it prohibits only discrimination that is "unfair" with respect to the class or classes that do not accept the plan. *In re 11,111, Inc.*, 117 B.R. 471,478 (Bankr. D. Minn. 1990). Thus, a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if classes comprising similarly situated claims or interests receive treatment under the plan that is not equivalent, and there is no reasonable basis for the disparate treatment. *See, e.g., In re Kennedy*, 158 B.R. 589, 599 (Bankr. D.N.J. 1993); *In re Resorts Int'l*, 145 B.R. 412, 481 (Bankr. D.N.J. 1990).

40.    Here, the "unfair discrimination" requirement does not apply to the Deemed Rejecting Classes, because there are no other Classes of Claims or Interests at the applicable Debtors that have similar legal rights to the rights of those Classes. Thus, there would be, and could be, no basis for the Deemed Rejecting Classes to assert that their treatment under the Plan is the result of unfair discrimination compared to similarly situated Classes.

### (2)    *The Plan is Fair and Equitable*

41.    Under section 1129(b)(2)(B)(ii) of the Bankruptcy Code, a plan is fair and equitable with respect to a dissenting class of claims if the holders of any claim or interest that is junior to the claims of such class will not receive or retain any property on account of such junior claim or interest. Moreover, under section 1129(b)(2)(C)(ii) of the Bankruptcy Code, a plan is fair and equitable with respect to a dissenting class of interests if no class junior to such class receives or retains any property under the plan. 11 U.S.C. § 1129(b)(2)(C)(ii); *see In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 352 (Bankr. D. Del. 1998) ("[W]here an estate is solvent . . .

unsecured and undersecured creditors' claims must be paid in full . . . before equity holders may participate in any recovery."); *In re Union Meeting Partners*, 165 B.R. 553, 569 (Bankr. E.D. Pa. 1994) (a plan is not fair and equitable if it violates the "absolute priority rule").

42.     The "fair and equitable" requirement is satisfied with respect to Classes 7A-E because there are no Classes of Claims junior to the Subordinated Claims, and holders of Interests are receiving nothing under the Plan.  The requirement is satisfied with respect to Class 7A because there is no Class of Claims or Interests junior to that Class.  Therefore, in accordance with section 1129(b) of the Bankruptcy Code, this Court may cram down the Plan on the Deemed Rejecting Classes.

### F.     The Plan's Permissive Provisions Are Appropriate Under Section 1123(b) of the Bankruptcy Code

43.     In addition to requiring certain provisions to be included in a chapter 11 plan, section 1123 of the Bankruptcy Code *permits* the inclusion of certain enumerated provisions (e.g., for impairment or non-impairment of claims and interests, treatment of executory contracts and unexpired leases, compromise of claims, or sale of assets), as well as "any other appropriate provision not inconsistent with the applicable provisions of th[e Bankruptcy Code]."  *See* 11 U.S.C. § 1123(b).  As is customary, the Plan contains several permissive provisions permitted by section 1123(b)'s discretionary authority, all of which are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.  Certain of these provisions are discussed below.

#### (1)     *Release Provisions*

44.     Sections 15.6 and 15.8 of the Plan provide for "debtor releases" and "third-party releases" in favor of (i) the Committee and all members thereof in their capacities as such, (ii) the Retirees' Committee and all members thereof in their capacities as such, (iii) the

respective post-petition directors, officers, employees, agents, attorneys, and professionals of the

Debtors, the Committee, or the Retirees' Committee (collectively, the "**Released Parties**").  (*See*

Plan § 3.1.110.)  The non-Debtor parties deemed to provide releases to the Released Parties are

(i) any holder of a Claim that is Unimpaired under the Plan (except for the IRS and the Texas

Comptroller of Public Accounts, which are carved out from providing a third-party release by

virtue of language in the Proposed Order), and (ii) any holder of a Claim who (a) votes to accept

the Plan, (b) does not opt out of providing a release, and (c) actually receives a distribution under

the Plan (collectively, the "**Releasing Parties**").  (*Id.* § 3.1.111.).  Given the absence of an

objection to the Plan's third-party release provisions by any party who would be deemed to grant

a release, these releases should be considered consensual.  *See, e.g., In re Indianapolis Downs,*

*LLC*, 486 B.R. 286, 304-06 (Bankr. D. Del. 2013) (holding failure to respond with an opt-out

election or object to confirmation of a plan constituted deemed consent to the plan's third-party

release provisions).

45.    In approving debtor releases and third-party releases, a court may consider a

number of factors, including: (i) the substantial contribution of the releasees since the petition

date; (ii) the essential nature of the releases to the approval of the Plan; and (iii) whether a

substantial majority of the creditors supports the plan.  *See In re Zenith Elecs. Corp.*, 241 B.R.

92, 110 (Bankr. D. Del. 1999) (citing *In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935-

36 (Bankr. W.D. Mo. 1994)).  The Committee submits that the release provisions in the Plan are

proper in light of these considerations, particularly given (i) the overwhelming acceptance of the

Plan by the voting Classes, and (ii) that, as noted above, holders of Claims in voting Classes

were able to "opt out" of providing releases by checking the appropriate box on their respective

Ballots.  *See, e.g., Indianapolis Downs*, 486 B.R. 286 (approving release with opt-out feature); *In*

*re Electroglas, Inc.*, No. 09-12416, 2010 Bankr. LEXIS 3277 at *33 (Bankr. D. Del. May 26,

2010) (same); *In re Latham Int'l, Inc.*, No. 09-12416 (PJW), 2010 Bankr. LEXIS 3188 at *38

(CSS) (Bankr. D. Del. Jan, 21, 2010) (same).  Further, the evidence at the Confirmation Hearing

will show that the release provisions are an integral part of the consideration for the Plan, and

that the failure to effect these provisions could seriously impair the Debtors' ability to confirm

the Plan, to the ultimate detriment of the Debtors' creditors.

**(2)**    ***Exculpation Provision***

46.    Section 15.9 of the Plan provides for limited exculpation from "liability to any

entity for any postpetition act taken or omitted to be taken on or before the Effective Date in

connection with, or related to, the Chapter 11 Cases," except to the extent such liability results

from an act or omission "that is determined by a Final Order to have constituted a crime, willful

misconduct, or gross negligence."  The parties entitled to the benefit of this exculpation are

(i) the Debtors, (ii) the Committee and all members thereof, in their capacity as such, (iii) the

Retirees' Committee and all members thereof, in their capacity as such, and (iv) their respective

"post-petition directors, officers, and professionals."

47.    In the seminal case of *In re PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000), the

Third Circuit Court of Appeals upheld a chapter 11 plan's exculpation of a creditors' committee

and its professionals against a challenge that such exculpation was inconsistent with section

524(e) of the Bankruptcy Code, which provides that the discharge of a debtor from a debt in

bankruptcy does not "affect the liability of any other entity on . . . such debt."  The *PWS Holding*

court held that, because creditors' committees (and by extension, their professionals) have

qualified immunity from liability for acts and omissions taken within the scope of their authority

as bankruptcy estate fiduciaries, the exculpation provision at issue did not "affect the liability of"

the committee members or their professionals—rather, it merely restated the standard for holding

20

them liable under principles of fiduciary law, which would require a showing of gross negligence or willful misconduct. *See* 228 F.3d at 245-47. Like the exculpation provision in *PWS Holding*, the exculpation provision in the Plan merely restates the standard of liability that would apply with respect to claims against estate fiduciaries for acts or omissions in connection with the Chapter 11 Cases, including an appropriate carve-out for gross negligence or willful misconduct. Accordingly, the Committee submits that the exculpation provision is both "appropriate" and "not inconsistent with the applicable provisions of th[e Bankruptcy Code]," and thus is expressly permitted by section 1123(b)(6).

### (3)     *Limited Substantive Consolidation*

48.     To promote the efficient administration and effectuation the Plan, including for purposes of distributions to be made under the Plan, Section 10.1 of the plan provides for the limited consolidation of the Debtors' Estates solely with respect to holders of General Unsecured Claims. As a result of such consolidation, separate Debtors and Estates will be treated as if they were a single Debtor with a single Estate, so that Claims enforceable against more than one Estate will be treated as a single Claim against the consolidated Estate (and likewise, a Claim enforceable against only one Estate will be treated as a Claim against the consolidated Estate).

49.     While substantive consolidation is the exception, rather than the rule, the Third Circuit Court of Appeals has recognized it may be appropriate where it is consensual in nature. *See In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005) (articulating standard for what must be proven "absent consent"). Here, the substantive consolidation provided by the Plan was consensual in nature, because (i) it was put up to a vote of creditors, on a non-consolidated basis, who voted in favor of receiving distributions on a consolidated basis, and (ii) apart from the PBGC and Majestic, whose objections have been resolved, no creditor or other party in interest has objected to the Plan on the basis of the proposed substantive consolidation.

50.     The Third Circuit has also recognized that substantive consolidation may be appropriate where, "postpetition the[ debtors'] assets are so scrambled that separating them is prohibitive and hurts all creditors." *Owens Corning*, 419 F.3d at 211.  The Committee submits that this harm to creditors rationale also supports the limited consolidation provided by the Plan because, absent such consolidation, it would be necessary to (i) allocate the purchase price received from the Purchaser for the Acquired Assets across the various Estates, (ii) allocate the expenses of administration of the Chapter 11 Cases across the various Estates, and (iii) reconcile intercompany balances, indemnity, and contribution rights between the Debtors, all before it would be possible to determine the appropriate amount to be distributed to creditors of each Estate.  The Committee believes that the administrative costs of taking these measures would consume, if not totally exhaust, the limited assets available for distribution in these Chapter 11 Cases, to the detriment of all creditors.

### G.     Amendments to the Plan Do Not Require Resolicitation

51.     Pursuant to section 1127(a) of the Bankruptcy Code, a plan proponent may modify the plan "at any time" prior to entry of a confirmation order so long as the modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and section 1127(d) of the Bankruptcy Code provides that all stakeholders that previously accepted the plan should also be deemed to have accepted the modified plan.  Courts routinely allow plan proponents to make changes to a plan that do not materially or adversely impact voting creditors without requiring the proponent to re-solicit the plan for acceptances.  *See, e.g.*, *In re New Power Co.*, 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated."); *In re Calpine Corp.*, No. 05-60200 (BRL), 2007 WL 4565223, at *6 (Bankr. S.D.N.Y.

Dec. 19, 2007) (approving modifications to plan regarding the settlement of certain objections without requiring the debtors to resolicit the plan); *In re Kmart Corp.*, Adv. No. 04 A 00126, 2006 WL 952042, at *27 (Bankr. N.D. Ill. Apr. 11, 2006) (holding that if modification does not adversely change the treatment of claims, then resolicitation is not required); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 813, 823 (Bankr. M.D. Fla. 2006) (same).

52.    The Committee respectfully submits that the amendments to the Plan following solicitation of votes—principally, the provisions for the reorganization of the lead Debtor around the Tax Assets and related issuance of New Stock for $100,000, and for the resolution of the PBGC's and Majestic's objections to consolidation—do not materially or adversely affect the recoveries of creditors who voted on the Plan. The former amendment undoubtedly *benefits* creditors by providing additional liquidity on the Effective Date. And the latter amendments were practically necessary in order to confirm the consolidating Plan for all Debtors (in light of the PBGC's initial vote to reject the Plan, which would have rendered compliance with section 1129(a)(10) impossible for a number of the Debtors), which, even as amended, likely provides a better financial outcome for creditors than the alternative of a chapter 7 liquidation. As a result, as such, the Plan can be confirmed without re-solicitation for Plan acceptances. *See* 11 U.S.C. § 1127(d).

## III.    RESERVATION OF RIGHTS

53.    The Committee expressly reserves its rights to amend or supplement this Memorandum of Law at or prior to the Confirmation Hearing. Nothing contained herein shall constitute a waiver of any of the rights and remedies of the Committee, and all such rights and remedies are hereby expressly reserved.

## IV.    CONCLUSION

54.    WHEREFORE, the Committee respectfully requests that the Court enter the

Proposed Order confirming the Plan and grant the Committee such other and further relief as is

just and proper.

Dated: April 23, 2018
       Wilmington, Delaware

**DRINKER BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Steven K. Kortanek (DE Bar No. 3106)
Patrick A. Jackson (DE Bar No. 4976)
Joseph N. Argentina, Jr. (DE Bar No. 5453)
222 Delaware Ave., Suite 1410
Wilmington, DE 19801-1621
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

Robert K. Malone (admitted *pro hac vice*)
600 Campus Dr.
Florham Park, NJ 07932-1047
Telephone: (973) 549-7000
Facsimile: (973) 360-9831

*Counsel for the Official*
*Committee of Unsecured Creditors*