IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KII Liquidating Inc. (f/k/a Katy Industries, Inc.), *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 17-11101 (KJC)<br><br>(Jointly Administered)<br><br>**Ref. Docket Nos. 576, 629 & 653** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
CONFIRMING SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND
CHAPTER 11 PLAN OF LIQUIDATION PROPOSED JOINTLY BY THE DEBTORS
AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

WHEREAS, KII Liquidating Inc. (f/k/a Katy Industries, Inc.) and its affiliated debtors

and debtors in possession (collectively, the "***Debtors***") and the Official Committee of Unsecured

Creditors (the "***Creditors' Committee***") in the above-captioned Chapter 11 Cases have

(i) proposed and filed with the Court the *Second Amended Combined Disclosure Statement and*

*Chapter 11 Plan of Liquidation* [D.I. 629], a conformed, final version of which is attached as

**Exhibit 2** hereto (as may be amended and supplemented, the "***Plan***"),[2] and (ii) filed the *Joint*

*Motion of the Debtors and the Official Committee of Unsecured Creditors for Entry of an Order*

*(A) Approving the Disclosure Statement on an Interim Basis, (B) Approving the Form of Ballot*

*and Solicitation Materials, (C) Establishing Procedures for Solicitation and Tabulation of Votes*

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, are:  KII Liquidating Inc. (f/k/a Katy Industries, Inc.) (7589), ComPro Liquidating LLC (f/k/a Continental Commercial Products, LLC) (3898), FTWH Liquidating Inc. (f/k/a FTW Holdings, Inc.) (7467), FWPI Liquidating Inc. (f/k/a Fort Wayne Plastics, Inc.) (7470), Wabash Holding Corp. (9908), KTI Liquidating Inc. (f/k/a Katy Teweh, Inc.) (9839), WII, Inc. (0456), TTI Holdings, Inc. (8680), GCW, Inc. (5610), Hermann Lowenstein, Inc. (4331), American Gage & Machine Company (7074), WP Liquidating Corp. (2310), Ashford Holding Corp. (8113), and HPMI, Inc. (4677).  The mailing address for each of the Debtors listed above, solely for purposes of notices and communications, is 400 S. Hope Street, Suite 1050, Los Angeles, California 90071 (<u>Attn</u>.: Lawrence Perkins, Chief Restructuring Officer).

[2]    The conformed version of the Plan is for ease of reference and reflects the changes to the Plan made by paragraphs 14 and 32 hereof.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

to Accept or Reject the Plan, (D) Scheduling a Plan Confirmation Hearing and Deadline for Filing Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan, (E) Approving the Related Form of Notice, and (F) Granting Related Relief [D.I. 533] (the "**Motion**");

WHEREAS, having held a hearing on the Motion on February 27, 2018 (the "**Conditional Disclosure Approval Hearing**"), the Court entered the *Order (A) Approving the Disclosure Statement on an Interim Basis, (B) Approving the Form of Ballot and Solicitation Materials, (C) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (D) Scheduling a Plan Confirmation Hearing and Deadline for Filing Objections to Final Approval of the Disclosure Statement and Confirmation of the Plan, (E) Approving the Related Form of Notice, and (F) Granting Related Relief* [D.I. 576] (the "**Conditional Approval and Procedures Order**") on March 8, 2018, conditionally approving the Plan for solicitation purposes only and scheduling a hearing to consider final approval of the disclosure provisions of the Plan, and confirmation of the Plan (the "**Confirmation Hearing**");

WHEREAS, due notice of the Confirmation Hearing has been given to holders of Claims and Interests, and other parties in interest, in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Conditional Approval and Procedures Order, as set forth in the *Affidavit of Service* [D.I. 585] (the "**Confirmation Notice Affidavit**");

WHEREAS, in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Conditional Approval and Procedures Order, solicitation packages containing a ballot (a "**Ballot**"), a notice of the Confirmation Hearing (including instructions on how to view or obtain paper copies of the Plan), and a letter from the Creditors' Committee in support of confirmation

2

of the Plan (collectively, the "*Solicitation Packages*") were transmitted to the holders of Claims

in Classes 4A, 4B, 4C, 4D, 4E, 4F, 4G, 4H, 4I, 4J, 4K, 4L, 4M, and 4N (the "*Voting Classes*");

WHEREAS, on April 25, 2018, the Voting Agent filed the *Amended Certification of JND

Corporate Restructuring Regarding Tabulation of Votes in Connection with the First Amended

Combined Disclosure Statement and Chapter 11 Plan of Liquidating Proposed Jointly by the

Debtors and the Official Committee of Unsecured Creditors* [D.I. 636] (the "*Voting

Certification*") containing a tabulation of all valid Ballots received and demonstrating

acceptance of the Plan by the Voting Classes;

WHEREAS, on April 23, 3018, the Committee filed its *Memorandum of Law in Support

of Confirmation of the Second Amended Combined Disclosure Statement and Chapter 11 Plan of

Liquidation Proposed Jointly by the Debtors and the Official Committee of Unsecured Creditors*

[D.I. 633] (the "*Confirmation Brief*");

WHEREAS, on April 25, 2018, the Debtors filed the *Declaration of Thomas J. Allison

Pursuant to 28 U.S.C. § 1746 in Support of Confirmation of the Second Amended Combined

Disclosure Statement and Chapter 11 Plan of Liquidation Proposed Jointly by the Debtors and

the Official Committee of Unsecured Creditors* [D.I. 637] (the "*Allison Declaration*");

WHEREAS, on April 30, 2018, the Committee filed the *Declaration of John P. Madden

Pursuant to 28 U.S.C. § 1746 in Support of Confirmation of the Second Amended Combined

Disclosure Statement and Chapter 11 Plan of Liquidation Proposed Jointly by the Debtors and

the Official Committee of Unsecured Creditors* [D.I. 649] (the "*Madden Declaration*");

WHEREAS, on April 26, 2018, the Court commenced the Confirmation Hearing, which

was continued to May 2, 2018;

92150752.5

WHEREAS, on May 1, 2018, counsel for the Committee filed a certification of counsel reporting that all objections to confirmation of the Plan had been resolved;

**NOW, THEREFORE**, based upon the Court's consideration of the entire record of these Chapter 11 Cases, including, among other things, (i) the Conditional Disclosure Approval Hearing, (ii) the Plan, (iii) the Motion, (iv) the Confirmation Notice Affidavit, the Voting Certification, the Allison Declaration, and the Madden Declaration, (v) any objections to the Plan, and (vi) the Confirmation Hearing; and the Court having found that the Plan disclosures are adequate within the meaning of section 1125(a) of the Bankruptcy Code and the Plan is confirmable in its current form; and all objections to the Plan having been settled, withdrawn, or overruled on the merits at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED AS FOLLOWS:**

A.     <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     <u>Jurisdiction, Venue, Core Proceeding</u>. The Court has jurisdiction over the Debtors' Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order. The Debtors are eligible debtors under section 109 of the

4

Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The Debtors and the Creditors' Committee are the Plan Proponents in accordance with section

1121(a) of the Bankruptcy Code. On May 14, 2017 (the "***Petition Date***"), the Debtors

commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

      C.     <u>The Official Committees</u>. On May 26, 2017, the Office of the United States

Trustee for the District of Delaware appointed the Creditors' Committee [D.I. 75]. On July 31,

2017, the Office of the United States Trustee for the District of Delaware appointed the Retirees'

Committee [D.I. 317].

      D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11

Cases maintained by the Clerk of the Court, including all pleadings and other documents filed,

all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings

held before the Court during the pendency of the Chapter 11 Cases.

      E.     <u>Adequate Information</u>. The Plan disclosures contain adequate information within

the meaning of section 1125(a) of the Bankruptcy Code.

      F.     <u>Conditional Approval and Procedures Order Compliance</u>. The Plan Proponents

have complied with the Conditional Approval and Procedures Order, including the solicitation

process, in all respects.

      G.     <u>Burden of Proof</u>. The Plan Proponents have the burden of proving the elements

of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The

Plan Proponents have met this burden.

      H.     <u>Voting</u>. As evidenced by the Voting Certification, votes to accept or reject the

Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the

Bankruptcy Code and the Bankruptcy Rules, the solicitation process set forth in the Conditional

Approval and Procedures Order, and applicable non-bankruptcy law.

I.      Solicitation.  The Solicitation Packages were transmitted and served in

compliance with the Bankruptcy Code, the Bankruptcy Rules (including specifically Bankruptcy

Rules 3017 and 3018), and the Conditional Approval and Procedures Order.  The form of the

Ballot adequately addressed the particular needs of these Chapter 11 Cases and is appropriate for

the holders of the Claims in the Voting Classes, which are impaired under the Plan and may

receive a distribution under the Plan, and whose votes were, therefore, solicited.

1.      The period during which the Plan Proponents solicited acceptances of the Plan was reasonable in the circumstances of these Chapter 11 Cases and enabled voting creditors to make an informed decision to accept or reject the Plan.

2.      The Plan Proponents were not required to solicit votes from the holders of Claims or Interests in the following Classes (the "***Deemed Accepting Classes***") as each such Class is either (i) unimpaired under the Plan and conclusively presumed to have accepted it, or (ii) voluntarily impaired under the Plan, and deemed to have accepted it: Classes 1A-N (Other Priority Claims), Classes 2A-N (Secured Tax Claims), and Classes 3A-N (Other Secured Claims).

3.      The Plan Proponents were not required to solicit votes from the holders of Claims or Interests in Classes 5A-N (Intercompany Claims), 6A-N (Subordinated Claims), and 7A-N (Interests in the Debtors) (the "***Deemed Rejecting Classes***"), as such Classes will receive no recovery under the Plan and are deemed to reject it.

4.      As described in and as evidenced by the Voting Certification and the Confirmation Notice Affidavit, the transmittal and service of the Solicitation Packages was timely, adequate, and sufficient under the circumstances.  The solicitation of votes on the Plan complied with the Conditional Approval and Procedures Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules, laws, and regulations.  In connection therewith, the Plan Proponents, and any and all affiliates, members, managers, shareholders, partners, employees, attorneys, and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

J.      Good Faith.  The Plan was negotiated in good faith and at arm's length, and the

Plan Proponents have not engaged in any collusive or unfair conduct in connection with the Plan.

6

K.    Notice. As is evidenced by the Voting Certification and the Confirmation Notice Affidavit, the transmittal and service of the Solicitation Packages were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Conditional Approval and Procedures Oder and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

L.    Plan's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors and the Creditors' Committee as Plan Proponents, thereby satisfying section 1129(a)(l) of the Bankruptcy Code.

M.    Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

N.    Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

O.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Plan Proponents, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has

7

been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying

section 1129(a)(4) of the Bankruptcy Code.

P.      Plan Administrator, Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)).

The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The

identity, affiliations, and compensation of the Plan Administrator proposed to serve after the

Effective Date have been fully disclosed on the record of these Chapter 11 Cases.

Q.      No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, the

Debtors' businesses will not involve rates established or approved by, or otherwise subject to,

any governmental regulatory commission.

R.      Best Interests Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7)

of the Bankruptcy Code. The liquidation analysis provided in the Plan, and the other evidence

proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been

controverted by other evidence, and (iii) establishes that each holder of an impaired Claim or

Interest either has accepted the Plan or will receive or retain under the Plan, on account of such

Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount

that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the

Bankruptcy Code on such date.

S.      Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C.

§ 1129(a)(9)). The Treatment of Allowed Administrative Expense Claims under the Plan

satisfies the requirements of Section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of

Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the

Bankruptcy Code.

T.      Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)).  With respect to each Debtor, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by an insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.      Feasibility (11 U.S.C. § 1129(a)(11)).  Confirmation of the Plan is not likely to be followed by the liquidation of the Debtors other than as set forth in the Plan itself, thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

V.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Plan provides that (i) all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors, (ii) that on and after the Effective Date, the Plan Administrator shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, and (iii) that, notwithstanding the substantive consolidation of the Debtors called for in the Plan, each and every one of the Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

W.      Inapplicable Provisions (11 U.S.C. §§ 1129(a)(13)-16)).  The Debtors (i) no longer maintain any retirement plans or other benefits obligations, (ii) do not have domestic support obligations, (iii) are not individuals, and (iv) are moneyed, business, or commercial corporations; accordingly, sections 1129(a)(13)-(16) are inapplicable to the Plan.

X.      Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)).  Based upon the evidence proffered, adduced, and presented by the Plan Proponents at the Confirmation

Hearing, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, the Deemed Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Classes.

Y.      Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in these Chapter 11 Cases; accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

Z.      Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of application of section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the Plan on any such grounds. Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

AA.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court at the Confirmation Hearing, as well as the record of the Chapter 11 Cases generally, the Plan Proponents and other Exculpated Parties have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure, in connection with all their respective activities relating to the solicitation of acceptances or rejections of the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code; therefore, the Exculpated Parties are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 15.9 of the Plan.

BB.     Plan Documents.  All documents necessary to implement the Plan, and all other relevant and necessary documents have been developed and negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, and subject to the occurrence

10

of the Effective Date, be valid, binding, and enforceable agreements and not in conflict with any
federal or state law.

CC.    Releases. The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157, and the
*Amended Standing Order of Reference* dated as of February 29, 2012, from the United States
District Court, to approve the releases set forth in Sections 15.6 and 15.8, and the related
injunction in Section 15.4, of the Plan. Section 105(a) of the Bankruptcy Code permits approval
of the releases and injunction because, as has been established here based upon the record in the
Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions
(i) were integral to the global settlement among the various parties in interest and are essential to
the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy
Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and
reasonable, (iv) are in the best interests of the Debtors and their Estates, and (v) with respect to
the third-party releases, have been consented to by the Releasing Parties.

DD.    Limited Substantive Consolidation. The limited substantive consolidation of the
Estates pursuant to section 10.1 of the Plan is consensual by virtue of (i) the unanimous
acceptance of the Plan by all Classes of General Unsecured Claims, coupled with (ii) the lack of
any pending objection to the proposed consolidation.

EE.    Core Compromises. Pursuant to section 1123(b)(3) of the Bankruptcy Code, the
exculpation provision and the releases and limited substantive consolidation set forth in the Plan
and implemented by this Plan Confirmation Order are fair, equitable, reasonable, and in the best
interests of the Debtors and their Estates. The record of the Confirmation Hearing and these
Chapter 11 Cases is sufficient to support the exculpation provision set forth in Section 15.9, and
the releases provided for in Sections 15.6 and 15.8, the related injunction in Section 15.4, and the

11

limited consolidation of the Estates set forth in Section 10.1 of the Plan, and based on that

record, the Court finds (i) that the exculpation, release, injunction, and substantive consolidation

provisions are not inconsistent with the Bankruptcy Code or other applicable law, and (ii) that

failure to implement such provisions would eviscerate the global settlement underlying the Plan,

and prevent confirmation of the Plan.

FF.     Post-Solicitation Amendments.  The post-solicitation amendments to the Plan do

not materially or adversely impact voting creditors, do not render the Plan incapable of satisfying

sections 1122, 1123, or 1125 of the Bankruptcy Code.  Accordingly, any holder of a Claim that

has accepted the Plan as solicited is deemed to have accepted the Plan as amended, and the Plan

Proponents shall not be required to resolicit acceptances of the Plan.

GG.     Based on the foregoing, the Plan satisfies the requirements for confirmation set

forth in section 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED
AS FOLLOWS:**

1.     Adequate Information.  The disclosure provisions in the Plan are approved on a

final basis as containing adequate information within the meaning of section 1125 of the

Bankruptcy Code, and any objections, responses, statements, and comments with respect to the

adequacy of the disclosures in the Plan not otherwise consensually resolved are hereby overruled

on their merits.

2.     Solicitation Procedures; Forms.  The procedures and forms conditionally

approved in the Conditional Approval and Procedures Order are hereby approved on a final basis

as consistent with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

92150752.5

3.      Confirmation of the Plan.  The Plan, attached hereto as **Exhibit A**, is approved and confirmed under section 1129 of the Bankruptcy Code, and any objections, responses, statements, and comments with respect to confirmation of the Plan not otherwise consensually resolved are hereby overruled on their merits.  The terms of the Plan are incorporated by reference into, and are an integral part of, this Plan Confirmation Order.

4.      Plan Administrator.  Emerald Capital Advisors is hereby approved as Plan Administrator to carry out the provisions of the Plan, for which it will be entitled to be compensation as set forth in **Exhibit 1** hereto.  From and after the Effective Date, the Plan Administrator shall be authorized to act on behalf of the Debtors in the same manner as the Debtors' directors and officers were authorized prior to the Effective Date, provided that the Plan Administrator shall have no duties other than as expressly set forth in the Plan.

5.      Post-Confirmation Committee.  The Post-Confirmation Committee shall consist of Titan Manufacturing Group, LLC and Material Difference Technologies, LLC.

6.      Dissolution of Creditors' Committee.  On the Effective Date, (i) the Creditors' Committee's rights with respect to the VP Causes of Action and the Adversary Proceeding shall vest in the Plan Administrator, as representative of the Estates, and (ii) the Creditors' Committee shall have no further powers or duties and shall be dissolved for all purposes, and its Professionals discharged from any further duties, in the Chapter 11 Cases, provided, however, that the Creditors' Committee and its Professionals shall be entitled, after notice and a hearing, to reasonable compensation and reimbursement of actual and necessary expenses incurred post-Effective Date in preparing and filing applications for Accrued Professional Compensation Claims and reimbursement of expenses incurred by members of the Creditors' Committee.

13

7.    General Authorizations.  The Plan was approved by all officers of the Debtors whose approval was necessary.  Pursuant to the appropriate provisions of the corporate or business organizations law of the applicable states of organization of the Debtors, and section 1142(b) of the Bankruptcy Code, no additional action of the respective directors, members, managers or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

8.    Resignation of Officers and Directors.  On the Effective Date and upon (i) the Debtors, or such entity designated by the Debtors, making the Effective Date Distributions, and (ii) the Debtors causing all Cash and tangible Assets of the Debtors and their Estates to be delivered to the Plan Administrator, the Debtors shall have no further duties or responsibilities in connection with implementation of this Plan; the directors and officers of each of the Debtors shall be deemed to have resigned; and the Debtors' Professionals shall be discharged from any further duties in the Chapter 11 Cases, provided, however, that the Debtors' Professionals shall be entitled, after notice and a hearing, to reasonable compensation and reimbursement of actual and necessary expenses incurred post-Effective Date in preparing and filing applications for Accrued Professional Compensation Claims.

9.    Binding Effect.  On the date of and following entry of this Plan Confirmation Order, and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, all holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the holders of such Claims or Interests have accepted the Plan), and any and all non-debtor parties to executory contracts and unexpired leases with the

14

Debtors, any other party in interest in these Chapter 11 Cases, and the respective heirs,

executors, administrators, successors, or assigns, if any, of any of the foregoing.

10.     Vesting of Assets.  On the Effective Date, pursuant to Bankruptcy Code sections

1141(b) and (c), other than the Tax Assets, all Assets of the Debtors and the Estates, including

Cash, the Reserved Causes of Action, and the D&O Liability Insurance Policies, shall vest in

ComPro Liquidating, Inc. (f/k/a Continental Commercial Products, LLC) free and clear of all

Claims, liens, encumbrances, charges, and other interests except as otherwise expressly provided

in the Plan or this Plan Confirmation Order.  On the Effective Date, the Tax Assets shall vest in

KII Reorganized Debtor.

11.     New Stock.  On the Effective Date, KII Reorganized Debtor shall be deemed to

have issued the New Stock in accordance with Section 9.1.4 of the Plan, which shall be the only

stock in KII Reorganized Debtor outstanding on the Effective Date after giving effect to the Plan

Transactions contemplated in the Plan.

12.     Implementation of Plan.  The Debtors are hereby authorized to execute, deliver,

file, or record such documents, contracts, instruments, releases, and other agreements, and to

take such other actions, as may be necessary or appropriate to effectuate, implement, or further

evidence the terms and conditions of the Plan.  On and after the Effective Date, the Plan

Administrator is authorized and empowered to issue, execute, file, and deliver or record such

documents, contracts, instruments, releases, and other agreements in the name of and on behalf

of the Debtors.

13.     Compromise of Controversies.  The provisions of the Plan constitute a good faith

compromise and settlement of all controversies that are resolved under the Plan.  Consideration

for all such compromises and settlements is adequate and the entry of this Plan Confirmation

92150752.5

Order constitutes approval of such compromises and settlements under Bankruptcy Rule 9019, subject to the provisions of the Plan.

14.     Plan Retiree Settlement Inapplicable. For the avoidance of doubt, the proposed Retiree Settlement in Section 12 of the Plan was rendered moot by the *Agreed Order Authorizing Debtors to Terminate Retiree Benefits* entered by the Court on March 22, 2018 [D.I. 591] (the "***Benefits Termination Order***"). As a result, the provisions of Section 12 of the Plan shall have no force or effect, and all matters relating to the termination of the Retiree Welfare Plans or the rights and obligations of the Retirees' Committee shall be governed exclusively by the Benefits Termination Order.

15.     Rejection of Executory Contracts and Unexpired Leases. Except as otherwise set forth in the Plan or this Plan Confirmation Order, pursuant to Section 11 of the Plan, as of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors is a party and that were not previously assumed, assumed and assigned, or rejected by order of this Court, are hereby rejected as of the Effective Date.

16.     Conditions to Effective Date. For the avoidance of doubt, the Plan shall not become effective unless and until the conditions set forth in Section 14.1 of the Plan have been satisfied or waived pursuant to section 14.2 of the Plan.

17.     Limited Substantive Consolidation. The limited consolidation of the Debtors' Estates provided in paragraph 10.1 of the Plan is hereby approved. The terms of the resolution of the PBGC's and Majestic's potential objections to this limited consolidation set forth in Sections 10.1.1 and 10.1.2 of the Plan, respectively, are hereby approved as reasonable, appropriate, and in the best interests of the Debtors and their Estates.

16

18.    <u>Exculpation</u>. The Exculpated Parties shall neither have nor incur any liability to any entity for any post-petition act taken or omitted to be taken on or before the Effective Date in connection with, or related to, the Chapter 11 Cases, including with respect to (i) the negotiation, documentation, and consummation of the Sale and any contract, instrument, release or other agreement or document created or entered into in connection with the Sale, and (ii) the formulation, negotiation, preparation, dissemination, implementation, administration, confirmation, and effectuation of the Plan and any contract, instrument, release or other agreement or document created or entered into in connection with the Plan; <u>provided</u>, <u>however</u>, that the foregoing "exculpation" shall have no effect on (i) the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted a crime, willful misconduct, or gross negligence; (ii) the VP Causes of Action or the Adversary Proceeding; or (iii) any claims asserted by David J. Feldman ("***Mr. Feldman***") against Charles Asfour and Victory Park Capital Advisors, LLC in the legal proceeding styled *David Feldman v. Charles Asfour, Katy Industries, Inc., and Victory Park Capital Advisors, LLC*, C.A. No. 16SL-CC04123 in the Circuit Court of St. Louis County, State of Missouri.

19.    <u>Debtor Releases</u>. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Released Parties, but excluding the Debtors, are deemed fully, completely, unconditionally, and irrevocably released and discharged by the Debtors, their Estates, the Debtors' current and former affiliates, and representatives, to the fullest extent permitted by applicable law, as such law may be extended subsequent to the Effective Date, from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors or their Estates, whether known or unknown, foreseen or unforeseen,

17

existing or hereafter arising, in law, equity, or otherwise, that the Debtors and their Estates would

have been legally entitled to assert in their own right (whether individually or collectively),

based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the

Chapter 11 Cases, the negotiation, documentation, and consummation of the Sale, the subject

matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the

Plan, the business or contractual arrangements between the Debtors and any of the Released

Parties, the negotiation, documentation, and consummation of the Sale and the DIP Facility, the

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, the business or contractual arrangements between the Debtors and any of the

Released Parties, the negotiation, formulation or preparation of the Plan, the Plan Documents, or

other documents, upon any other act or omission, transaction, agreement, event, or other

occurrence taking place on or before the Effective Date, other than claims or liabilities arising

out of or relating to any act or omission of a Released Party that is determined by a Final Order

to have constituted a crime, willful misconduct, or gross negligence; provided, however, that the

foregoing release shall not affect any obligation or liability arising post-Effective Date under the

Plan or in connection with any Plan Transaction.  For the avoidance of doubt, the foregoing

release shall have no effect (i) on rhe VP Causes of Action or the Adversary Proceeding, or

(ii) on any direct, non-derivative claim of Feldman against any Released Party that neither the

Debtors nor their Estates would have been legally entitled to assert in their own right (whether

individually or collectively).

     20.     Third-Party Releases.  On the Effective Date, for good and valuable

consideration, the adequacy of which is hereby confirmed, the Released Parties, but excluding

the Debtors, are deemed released and discharged by the Releasing Parties to the fullest extent

92150752.5

permitted by applicable law, as such law may be extended subsequent to the Effective Date, from

any and all claims, Claims, obligations, rights, suits, damages, Causes of Action, remedies, and

liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the

Releasing Parties, whether known or unknown, foreseen or unforeseen, existing or hereafter

arising, in law, equity, or otherwise, that the Releasing Parties would have been legally entitled

to assert in their own right (whether individually or collectively), based on or relating to, or in

any manner arising from, in whole or in part, the Debtors, the Chapter 11 Cases, the negotiation,

documentation, and consummation of the Sale, the subject matter of, or the transactions or events

giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between the Debtors and any of the Released Parties, the negotiation, formulation

or preparation of the Plan, the Plan Documents, or other documents, upon any other act or

omission, transaction, agreement, event, or other occurrence taking place on or before the

Effective Date, other than claims or liabilities arising out of or relating to any act or omission of

a Released Party that is determined by a Final Order to have constituted a crime, willful

misconduct, or gross negligence; provided, however, that the foregoing release shall not affect

any obligation or liability arising post-Effective Date under the Plan or in connection with any

Plan Transaction.  Notwithstanding anything to the contrary in the Plan, the Internal Revenue

Service (the "*IRS*") and the Texas Comptroller of Public Accounts (the "*Texas Comptroller*")

are not Releasing Parties for any purpose under the Plan.  And for the avoidance of doubt, the

PBGC and Feldman are not Releasing Parties for any purpose under the Plan.

21.    Injunction.  Except as otherwise expressly provided in the Plan, this Plan

Confirmation Order, or a separate order of the Court, all persons and entities who have held, hold

or may hold Claims against or Interests in any or all of the Debtors, are permanently enjoined, on

92150752.5

and after the Effective Date, from (a) commencing or continuing in any manner any action or

other proceeding of any kind against the Estates, the Plan Administrator, or any property of the

Debtors, the Estates, or the Plan Administrator, with respect to any such Claim or Interest;

(b) the enforcement, attachment, collection or recovery by any manner or means of any

judgment, award, decree or order against the Estates, the Plan Administrator, or any property of

the Debtors, the Estates, or the Plan Administrator, on account of any such Claim or Interest;

(c) creating, perfecting or enforcing any encumbrance of any kind against any property of the

Debtors, the Estates, or the Plan Administrator on account of any such Claim or Interest;

(d) asserting any right of setoff of any kind against any obligation due from the Debtors or

against the property or interests in property of the Debtors or the Estates on account of any such

Claim or Interest; and (e) commencing or continuing in any manner any action or other

proceeding of any kind with respect to any claims and Causes of Action which are retained

pursuant to the Plan.  Upon the entry of this Plan Confirmation Order, all holders of Claims and

Interests and other parties in interest, along with their respective present or former employees,

agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere

with the implementation or consummation of the Plan by the Debtors, the Plan Administrator,

and their respective affiliates, employees, advisors, officers and directors, or agents.  For the

avoidance of doubt, nothing in this paragraph is intended, nor shall it be construed, to enjoin or

preclude the PBGC or the Pension Plans from enforcing any liability or responsibility with

respect to any Pension Plan under any law, governmental policy, or regulatory provision, against

a party other than the Debtors or the Plan Administrator.

      22.    <u>Term of Injunctions or Stays</u>.  Except as otherwise provided in the Plan, this

Confirmation Order, or a separate order of the Court, to the maximum extent permitted by

20

applicable law and subject to the Court's post-confirmation jurisdiction to modify the injunctions

and stays under this Plan, (a) all injunctions with respect to or stays against an action against

property of the Debtors' Estates arising under or entered during the Chapter 11 Cases under

sections 105 or 362 of the Bankruptcy Code, and in existence as of the entry of this Plan

Confirmation Order, shall remain in full force and effect until such property is no longer property

of the Debtors' Estates, and (b) all other injunctions and stays arising under or entered during the

Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code shall remain in full force

and effect until the earliest of (i) the date that the Chapter 11 Cases are closed pursuant to a Final

Order of this Court or (ii) the date that the Chapter 11 Cases are dismissed pursuant to a Final

Order of this Court. For the avoidance of doubt, there are currently no injunctions or stays

arising under or entered during the Chapter 11 Cases that would enjoin or preclude the PBGC or

the Pension Plans from enforcing any liability or responsibility with respect to any Pension Plan

under any law, governmental policy, or regulatory provision, against a party other than the

Debtors.

23.    Terms of Injunction/Stay as to Mr. Feldman. Notwithstanding any other

provisions of this Plan Confirmation Order or the Plan, upon the earlier to occur of ("*Stay*

*Termination Date*"): (a) the ninetieth (90th) day after this Plan Confirmation Order becomes a

Final Order (or such later date, not to exceed the one hundred twentieth (120th) day after this

Plan Confirmation Order becomes a Final Order, as the Court may order prior to the expiration

of the ninetieth (90th) day after entry of this Plan Confirmation Order, for cause and after notice

and a hearing) and (b) the date upon which the Debtors, the Plan Administrator, or any other

Estate representative under section 1123 of the Bankruptcy Code (together, the "*Estate*

*Representative*"), files a complaint against, or an objection to Proof of Claim #7 (as amended by

Proof of Claim #127 and #180, the "**Feldman Claim**") filed by, Mr. Feldman, all stays and

injunctions provided for under the Plan and Plan Confirmation Order shall terminate

immediately as to Mr. Feldman and without further notice or order of this Court, and Mr.

Feldman shall be entitled immediately to prosecute and otherwise pursue (i) all claims filed (or

to be filed) against any Debtor  (A) in the action styled *David Feldman v. Charles Asfour, Katy*

*Industries, Inc., and Victory Park Capital Advisors*, LLC, C.A. No. 16SL-CC04123 (the

"*Action*"), and (B) with the Equal Employment Opportunity Commission and the Missouri

Commission on Human Rights, and (ii) all counterclaims that may be asserted against any

Debtor in response to any complaint against him or objection to the Feldman Claim filed by such

Estate Representative on behalf of such Estate.  Nothing in the Plan or this Plan Confirmation

Order shall affect Mr. Feldman's right to (a) recover on any claims (whether against the Debtors

or third parties) from any applicable insurance proceeds or (b) prosecute all of his direct claims

against any non-debtor and to collect all damages awarded to Mr. Feldman in relation to such

claims, provided, however, that Mr. Feldman shall be entitled to a single recovery on the

Feldman Claim from all sources, and, if and when he has obtained such recovery, he shall not be

entitled to any further Distributions under the Plan; and further provided, however, Mr. Feldman

may not execute on property of the Debtors, the KII Reorganized Debtor or the Plan

Administrator, other than the proceeds of any applicable insurance (to the extent such proceeds

are considered property of the Estates).  For the avoidance of doubt, nothing in this paragraph is

intended, nor shall it be construed, as (i) an admission as to the timeliness or validity of all or any

portion of the Feldman Claim, or any counterclaim that might be asserted by Mr. Feldman, (ii) a

waiver of any setoff or recoupment rights of Mr. Feldman, the Debtors or their Estates, or (iii) a

waiver of any right to seek subordination of all or any portion of the Feldman Claim under

92150752.5

section 510 of the Bankruptcy Code or any of Mr. Feldman's defenses thereto. The automatic

stay imposed by section 362 of the Bankruptcy Code shall remain in full force and effect through

the Stay Termination Date notwithstanding section 362(e) of the Bankruptcy Code; provided,

however, that, any time on or after the 90th day after this Plan Confirmation Order becomes final

and non-appealable, Mr. Feldman may amend his complaint in the Action, but the Plan

Administrator's time to answer, move or otherwise respond to the amended complaint shall not

begin to run until the Stay Termination Date. Mr. Feldman may forward a copy of this Plan

Confirmation Order to the Circuit Court of St. Louis County with a brief cover letter and shall

copy the Committee, the Plan Administrator, and the Debtors on any such correspondence.

24.     Retention of Jurisdiction. Notwithstanding the entry of this Plan Confirmation

Order and the occurrence of the Effective Date, following the Effective Date, the Court shall

retain jurisdiction over the Chapter 11 Cases and the matters set forth in Section 16 of the Plan.

25.     Applicable Non-Bankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of

the Bankruptcy Code, the provisions of this Plan Confirmation Order, the Plan, and related

documents, and any amendments or modifications thereto, shall apply and be enforceable

notwithstanding any other applicable non-bankruptcy law. This Plan Confirmation Order shall

constitute all approvals and consents required, if any, by the laws, rules, or regulations of any

state or other governmental authority with respect to the implementation or consummation of the

Plan, any documents, instruments, or agreements, and any amendments or modifications thereto,

and any other acts referred to in, or contemplated by, the Plan.

26.     Notice of Entry of Plan Confirmation Order and Effective Date. Within two

business days after the Effective Date, the Plan Administrator shall file and serve notice of entry

of this Plan Confirmation Order and occurrence of the Effective Date of the Plan on all parties

23

92150752.5

who received notice of the Confirmation Hearing, which notice shall be reasonable and adequate under the circumstances.

27.    Final Decrees.  Upon certification of Plan Administrator's counsel following occurrence of the Effective Date, which certification shall, consistent with Del. Bankr. L.R. 3017-2, present a separate proposed order for each Chapter 11 Case, the Court shall enter final decrees in the following Chapter 11 Cases (the "**Non-Lead Cases**"): ComPro Liquidating LLC (Case No. 17-11102-KJC), FTWH Liquidating Inc. (Case No. 17-11103-KJC), FWPI Liquidating Inc. (Case No. 17-11104-KJC), Wabash Holding Corp. (Case No. 17-11105-KJC), KTI Liquidating Inc. (Case No. 17-11106-KJC), WII, Inc. (Case No. 17-11107-KJC), TTI Holdings, Inc. (Case No. 17-11108-KJC), GCW, Inc. (Case No. 17-11109-KJC), Hermann Lowenstein, Inc. (Case No. 17-11110-KJC), American Gage & Machine Company (Case No. 17-11111-KJC), WP Liquidating Corp. (Case No. 17-11112-KJC), Ashford Holding Corp. (Case No. 17-11113-KJC), and HPMI, Inc. (Case No. 17-11114-KJC).  Following closure of the Non-Lead Cases, any and all recourse for any Claims, Interests, or equitable relief with respect to the Debtors in those cases shall proceed exclusively in the Chapter 11 Case of KII Liquidating, Inc. in accordance with the Plan and any Final Orders entered in the Chapter 11 Cases.  Upon entry of a final decree closing the Chapter 11 Case of a Non-Lead Debtor *other than* ComPro Liquidating LLC (f/k/a Continental Commercial Products, LLC), such Debtor shall be deemed dissolved immediately and for all purposes in accordance with applicable state law.

28.    DOJ Environmental Enforcement Section.  Nothing in this Plan Confirmation Order or the Plan discharges, releases, precludes, or enjoins any liability to a governmental unit on the part of any entity other than the Debtors or the Debtors' Estates.  Nor shall anything in this Plan Confirmation Order or the Plan enjoin or otherwise bar a governmental unit from

24

asserting or enforcing, outside of this Court, any liability against an entity other than the Debtors

or the Debtors' Estates.  Nothing in this Plan Confirmation Order or the Plan shall affect any

setoff or recoupment rights of any governmental unit to the extent allowed under section 553 of

the Bankruptcy Code.

29.     IRS.  Notwithstanding any provision to the contrary in the Plan or this Plan

Confirmation Order, nothing shall (i) affect the ability of the IRS to pursue any non-debtors to

the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal

tax liabilities owed by the Debtors or the Estates; (ii) affect the rights of the United States to

assert setoff and recoupment and such rights are expressly preserved; or (iii) require the IRS to

file an administrative claim in order to receive payment for any liability described in 11 U.S.C.

§ 503(b)(1)(B) and (C).  To the extent Allowed Priority Tax Claims of the IRS (including any

federal tax assessments, penalties, interest or additions to tax entitled to priority under the

Bankruptcy Code) are not paid in full in cash on the Effective Date, such Allowed Priority Tax

Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in

26 U.S.C. §§ 6621 & 6622.  Administrative Expense Claims of the IRS that are Allowed

pursuant to the Plan or section 503 of the Bankruptcy Code shall accrue interest and penalties as

provided by non-bankruptcy law until paid in full.  Moreover, nothing in the Plan or this Plan

Confirmation Order shall: (a) be construed as a compromise or settlement of any Claim or

interest of the IRS; (b) effect a release or discharge, or otherwise preclude any Claim whatsoever

against any Debtor by or on behalf of the IRS for any liability arising out of any unfiled tax

return or any pending audit or audit which may be performed with respect to any unfiled tax

return; or (c) enjoin the IRS from amending any Claim against any Debtor with respect to any

tax liability arising as a result of the filing of an unfiled return or a pending audit or audit which

92150752.5

may be performed with respect to any tax return.  Further, any liability arising as a result of an

unfiled return or final resolution of a pending audit or audit which may be performed with

respect to any such tax return shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(A) and

(C).  The Debtors' federal tax returns for 2017 shall be filed on or before October 17, 2018.

30.     <u>Texas Comptroller</u>.  Notwithstanding any provision to the contrary in the Plan or

this Plan Confirmation Order, nothing shall (i) affect the ability of the Texas Comptroller to

pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may

be related to any State tax liabilities owed by the Debtors or the Estates; (ii) affect the rights of

the State of Texas to assert setoff and recoupment and such rights are expressly preserved; or

(iii) require the Texas Comptroller to file an administrative claim in order to receive payment for

any liability described in 11 U.S.C. § 503(b)(1)(B) and (C).  To the extent Allowed Priority Tax

Claims of the Texas Comptroller (including any state tax assessments, penalties, interest or

additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the

Effective Date, such Allowed Priority Tax Claims shall accrue interest commencing on the

Effective Date at the rate and method set forth in 26 U.S.C. §§ 6621 & 6622.  Administrative

Expense Claims of the Texas Comptroller that are Allowed pursuant to the Plan or section 503 of

the Bankruptcy Code shall accrue interest and penalties as provided by non-bankruptcy law until

paid in full.  Moreover, nothing in the Plan or this Plan Confirmation Order shall: (a) be

construed as a compromise or settlement of any Claim or interest of the Texas Comptroller;

(b) effect a release or discharge, or otherwise preclude any Claim whatsoever against any Debtor

by or on behalf of the Texas Comptroller for any liability arising out of any unfiled tax return or

any pending audit or audit which may be performed with respect to any unfiled tax return; or

(c) enjoin the Texas Comptroller from amending any Claim against any Debtor with respect to

26

any tax liability arising as a result of the filing of an unfiled return or a pending audit or audit

which may be performed with respect to any tax return. Further, any liability arising as a result

of an unfiled return or final resolution of a pending audit or audit which may be performed with

respect to any such tax return shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(A) and

(C).

31.    Mr. Feldman.  For the avoidance of doubt, nothing in Section 11.2 of the Plan

alters the substantive legal standard or procedural rules that would otherwise apply, in the

absence of the Plan, to any estimation of the Feldman Claim.  Notwithstanding Section 11.4 of

the Plan, the Feldman Claim shall not be deemed disallowed pursuant to section 502(d) of the

Bankruptcy Code simply by virtue of the Plan Administrator's commencement of a proceeding

against Mr. Feldman asserting a Cause of Action under section 542, 543, 544, 545, 547, 548,

549, or 550 of the Bankruptcy Code (a "*Predicate Cause of Action*"), but prior to a finding of

liability on such Predicate Cause of Action; provided, however, that if the Plan Administrator

commences such a proceeding then the Feldman Claim shall be deemed a "Disputed Claim" for

purposes of the Plan until the earlier of (i) entry of a Final Order resolving all Predicate Causes

of Action in Mr. Feldman's favor or (ii) payment by Mr. Feldman of any amounts, or turnover by

Mr. Feldman of any property, for which Mr. Feldman is determined liable on a Predicate Cause

of Action.  Nothing in this Confirmation Order or the Plan shall affect any setoff rights of Mr.

Feldman that are otherwise enforceable under section 553 of the Bankruptcy Code.

32.    "Allowed" Definition.  Section 3.1.6 of the Plan is hereby amended and restated

in its entirety as follows:

> *Allowed* means any Claim against or Interest in a Debtor (i) that
> has been listed on the Debtor's Schedules as liquidated in amount
> and not disputed or contingent, for which no Proof of Claim has
> been filed, and as to which the Debtors or other parties in interest

27

have not filed an objection, (ii) on account of which a Proof of
Claim was filed in accordance with any order of the Bankruptcy
Court, the Plan, the Bankruptcy Code, and the Bankruptcy Rules,
and as to which no objection to allowance of such Claim has been
interposed by a party in interest or  any objection has been
determined by a Final Order  in favor of the respective holder,
(iii) that has been expressly allowed by a Final Order or pursuant
to this Plan, or (iv) that has been allowed by virtue of a stipulation
between the Debtors and the claimant and approved by the
Bankruptcy Court. Any Claim that has been or is hereafter listed
in the Schedules as contingent, unliquidated or disputed, and for
which no Proof of Claim has been timely filed, is not considered
Allowed and shall be expunged on the Effective Date without
further action by the Debtors or the Plan Administrator and without
any further notice to or action, order, or approval of the
Bankruptcy Court.

33.     Committee Standing/Privilege.  The Committee asserts that the Estates may

possess Causes of Action against Mr. Feldman, and objections and defenses to the Feldman

Claim (collectively, "*Feldman Disputes*").  To the extent the Committee does not have standing

to investigate or pursue the Feldman Disputes, the Committee, and upon and following the

Effective Date the Plan Administrator or its designees as appointed representatives in accordance

with section 1123(b) of the Bankruptcy Code, is hereby granted authority and standing to

investigate, including authority to seek (in accordance with applicable law and rules and subject

to rights to object) to compel the production of documents and issue subpoenas for oral

examination, and pursue the Feldman Disputes.  The Debtors and their professionals and

advisors will provide the Committee and its professionals (the Plan Administrator is a

Committee Professional and shall have the rights and benefits of this paragraph in both

capacities) documents and other information gathered, and relevant work product developed,

related to the Feldman Disputes, provided that the provision of any such documents and

information shall be without waiver of any attorney-client, work product, joint defense or

common interest privileges or other immunities attaching to any such documents or information

28

(whether written or oral), which privileges or other immunities shall be jointly held between the Debtors and the Committee, and following the Effective Date also jointly held with the Plan Administrator.  The rights granted to the Committee, and to the Plan Administrator upon and following the Effective Date, may be assigned or transferred as necessary, in consultation with the Debtors, to effectuate the purposes and intent of the foregoing grant.

34.     Waiver of Stay.  The stay of this Plan Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen days or otherwise, is hereby waived, and this Plan Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

35.     Inconsistency.  To the extent of any inconsistency between this Plan Confirmation Order and the Plan, this Plan Confirmation Order shall govern.

36.     No Waiver.  The failure to specifically include any particular provision of the Plan in this Plan Confirmation Order shall not diminish the effectiveness of such provision or constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

Dated: _Muy 2_, 2018

The Honorable Kevin J. Carey
United States Bankruptcy Judge

92150752.5